43693. STYLES v. THE STATE.

WHITMAN, Judge. 1. While it is no defense in a prosecution for unjustifiable homicide that the decedent received inferior medical treatment for the wound inflicted (*Downing v. State*, 114 Ga. 30 (2), (39 SE 927)), or that the death was proximately

caused by a pre-existing physical condition of the decedent and was only aggravated or accelerated by the wound and would not have resulted from the wound alone (*Wilson v. State,* 190 Ga. 824, 829 (2) (10 SE2d 861); *Wells v. State,* 46 Ga. App. 412 (167 SE 709)), it is a defense that there was no causal relationship between the wound inflicted and the death and that the death resulted from a completely independent cause. *Kilgore v. State,* 95 Ga. App. 462 (98 SE2d 72).

2. In the present case the defendant was accused and tried for the murder of one Bogus Ranson by shooting him in the head with a pistol. He was convicted and sentenced for voluntary manslaughter and appeals therefrom. Two defenses were presented, to wit: (1) A denial of the fact of homicide, i.e., defendant admitted shooting the decedent but denied that the wound caused death; and (2) if there was a homicide, it was justifiable.

With regard to the first defense, the defendant presented the testimony of the doctor who had administered to the decedent at the hospital after the shooting. The doctor testified that the decedent had received a bullet wound "which caused some injury to his upper lip, injury to some of the upper teeth, it went through the floor of his mouth, and apparently exited . . . in the lower part of his neck, all on the right side"; and that when he first saw him at the hospital he was conscious and reasonably alert, able to talk, and his blood pressure was high.

The doctor further testified that after the decedent got to the ward and received pain relief he quieted down and was having no difficulty breathing; that he did have some bloody mucous in his mouth which he spit out; that he was able to sit up in bed and drink coffee; that treatment was to prevent infection and he was not actively bleeding; that x-rays showed no bone injury and in his medical judgment the paravertebral arteries had not been severed and there was no danger of brain damage; and that, although any gunshot wound in the neck is serious, he did not in his medical judgment consider the decedent was in danger of death.

The doctor further testified that shortly after he had left the hospital he was notified that the decedent had been doing all right and had coughed and immediately died; that he was surprised and that he has doubts, notwithstanding that he died only three hours after receiving a bullet wound, that such

was the real immediate cause of the death; that the bullet wound could have been connected with or contributed to his death, but it is also possible that his death was from a cause independent of the wound, such as a heart attack or pulmonary embolus, but he could not say with certainty.

A county medical examiner, a medical doctor, testified for the State that from his observation in the morgue of the exit point of the bullet, it had passed through the paravertebral vessels and that the bullet wound was the cause of death. No autopsy was performed on the body.

3. The merit of the defendant's defense as to denial of the fact of homicide in view of the above evidence is not in question here. That is, of course, a matter for the jury to decide, having regard to the law as given in the charge. Defendant contends in his enumeration of errors that the charge of the court, to which timely objections were made and overruled, precluded a consideration by the jury of this particular defense.

As the defendant points out, the record shows that the trial judge repeatedly charged the jury that "the defendant in this case *admits the homicide*", and elsewhere referred to the *"admitted homicide."* The record shows no express admission by the defendant. Nor does any of the evidence, as strong or as weak as it may be for either party, permit such a conclusion. "[W]here one of the principal issues was whether or not there was a homicide or whether the deceased died of natural causes, the judge should not assume, in charging the jury, that there was a homicide." *Nelson v. State,* 58 Ga. App. 243 (3) (198 SE 305). In our view such a characterization of the defendant's position with regard to the case nullified a defense which he had asserted and was entitled to have submitted to the jury. A new trial will be required.

4. The defendant's other three enumerations of error are without merit.

*Judgment reversed. Felton, C. J., and Eberhardt, J., concur.*

Submitted June 3, 1968—Decided October 7, 1968.

*C. B. King,* for appellant.

*Robert W. Reynolds, Solicitor General,* for appellee.